[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 08-13555
Non-Argument Calendar
_____

Agency No. A95-673-985

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
APRIL 7, 2009
THOMAS K. KAHN
CLERK

LUIS JOAQUIN BARRIOS-BERMUDEZ,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

(April 7, 2009)

Before BLACK, BARKETT and KRAVITCH, Circuit Judges.

PER CURIAM:

Luis Joaquin Barrios-Bermudez, a native and citizen of Cuba, seeks review

of the Board of Immigration Appeals' (the "BIA") decision affirming an Immigration Judge's ("IJ") order of removal under sections 212(a)(6)(C)(ii) and 212(a)(7)(A)(i)(I) of the Immigration and Nationality Act (INA) and denial of his application for asylum and withholding of removal.[1] After a thorough review of the record, we affirm the denial of his petition for asylum and withholding of removal.

## BACKGROUND

Barrios-Bermudez arrived in the United States from Cuba by airplane, via Brazil. He entered the United States on August 13, 2004, after traveling through Brazil and Paraguay for some period of time. As he exited the plane, he encountered two immigration officers who requested to see his documents. Barrios-Bermudez then presented a U.S. passport belonging to another person, Marcio Mejia-Rodamilans, and had no valid immigrant visa, reentry permit, border crossing identification card, or other valid entry document.

On August 16, 2004, the Department of Homeland Security issued Barrios-Bermudez a Notice to Appear, charging him with removability under INA

---

[1] Barrios-Bermudez initially sought relief under the U.N. Convention Against Torture and Other Cruel, Inhuman, or Degrading Treatment or Punishment (CAT), but failed to raise any arguments regarding CAT relief in his brief on appeal. Accordingly, he has abandoned this claim. See Ruiz v. U.S. Att'y Gen., 440 F.3d 1247, 1257 n.6 (11th Cir. 2006).

§§ 212(a)(6)(C)(ii) and 212(a)(7)(A)(i)(I). At a removal hearing before the IJ, Barrios-Bermudez conceded removability under § 212(a)(7)(A)(i)(I), for being an applicant for admission not in possession of a valid entry document, but denied removability under § 212(a)(6)(C)(ii), as an alien who falsely represented himself to be a U.S. citizen for a purpose or benefit under the INA or other federal law.

Barrios-Bermudez also submitted an application for asylum and withholding of removal based on his political opinion, stating that he feared harm or mistreatment if he returned to Cuba. He asserted that the government would consider him a political dissident on account of his overstay in the United States and his application of asylum. He stated his belief that the government would imprison him upon his return, whereupon he would experience torture, malnutrition, disease, and lack of medical care. He testified that he had never been charged, arrested, detained, interrogated, convicted, sentenced, or imprisoned in Cuba. He was a member of the Committees for the Defense of the Revolution (the "CDR") from 1993 to 2004, but held no leadership position, and served in the military as a soldier from 1994 to 1996. Neither he nor his family continued to participate in these groups. His wife and three children remained in Cuba.

The Department of State's Profile of Asylum Claims and Country Conditions in Cuba for 1997 that was submitted in support of the application

3

stated that persons "subjected to other disproportionately harsh or discriminatory treatment resulting from perceived or actual political . . . beliefs or activities" were at risk of persecution in Cuba.  "It [was] against the law to leave Cuba without permission," and that  "illegal exit was considered a political offense until 1979, when the law was changed to make it only a criminal offense."  Offenders can be sentenced between 18 months and 3 years' imprisonment.  "However, . . . in recent years, the [g]overnment ha[d] adopted a de facto depenalization of this crime" with offenders "receiving punishments of fines or house arrest rather than imprisonment."  Additionally, it was "against Cuban law for citizens to apply for asylum," and  "[a]lthough the U.S. asylum process is confidential, it appear[ed] possible that in some cases the Cuban authorities could determine if a returnee had applied for asylum."  The Cuban government "might ascribe dissident political motives to the application."  Finally, Cuba considers those who prolong their stay beyond the authorized period to have abandoned their country and, if they return, they "may face criminal charges and up to [three] years' imprisonment, although . . . in recent years, the [g]overnment ha[d] often imposed fines and/or house arrest rather than a prison term."  The Department of State's Country Report on Human Rights Practices in Cuba for 2004 stated that conditions in prison were extreme and that prisoners might be subjected to torture and other mistreatment, including

malnutrition and insufficient medical care.

At a hearing on May 16, 2006, Barrios-Bermudez testified that he worked illegally as an independent baker in Cuba, but the government did not take any actions against him because he worked in isolation with his family. He had served in Cuba's military for two years as a soldier, and had never been arrested. He stated that he left Cuba on June 21, 2004, and traveled through Brazil before entering the United States on August 16, 2004. He left his wife and children in Cuba because he feared imprisonment. He sought asylum in the United States because he disagreed with the system in Cuba. He was a member of the CDR in Cuba, as required by the government. He was scolded on many occasions because of the way he spoke about the government.

He testified that his wife had a university degree in education, but she was suspended from work after trying to leave Cuba illegally with their children because she did not agree with the Cuban system. When his wife returned to Cuba, she was detained for two days and released. He stated that his daughter had suffered "complete persecution" in school, and his wife received unexpected visitors at the house, threatening to take their children if she tried to leave the country again.

Barrios-Bermudez argued that he demonstrated eligibility for asylum

because he had a well-founded fear on account of his political opinion.  He asserted that there was a reasonable likelihood that the Cuban government would persecute him for filing an asylum claim in the United States.  Further, he submitted that he demonstrated eligibility for withholding of removal because there was a clear probability that he would be persecuted upon returning to Cuba for an imputed political opinion.

The IJ determined that Barrios-Bermudez failed to meet his burden of proof for asylum.  First, it found that he did not make a claim of past persecution, as his allegation that the government scolded him did not rise to the level of persecution.  His testimony also failed to demonstrate a well-founded fear of future persecution because he failed to provide any details regarding his political expression in the United States.  Further, he failed to provide evidence that the government would discover that he applied for asylum in the United States.  Because he failed to establish eligibility for asylum, the IJ also denied Barrios-Bermudez application for withholding of removal.

Barrios-Bermudez appealed to the BIA, contesting his removability under § 212(a)(6)(C)(ii).  He did not, however, contest his removability under § 212(a)(7)(A)(i)(I).  He also appealed the IJ's determination that he was not eligible for asylum or withholding of removal.  The BIA affirmed the IJ's

6

decision, adopting in part the IJ's reasoning and in part issuing its own opinion. The BIA upheld the finding that he was removable under INA § 212(a)(6)(C)(ii) for the reasons stated in the IJ's decision, noting that the IJ's findings were not clearly erroneous. Additionally, the BIA determined that Barrios-Bermudez failed to establish eligibility for asylum for the reasons stated in the IJ's decision. The BIA noted that his wife was not subject to any harm rising to the level of persecution, and Barrios-Bermudez did not show that he suffered any past persecution or that he had a well-founded fear of future persecution. Because he failed to meet the burden of proof for asylum, he also failed to show that he was entitled to withholding of removal, and the BIA dismissed the appeal.

## STANDARD OF REVIEW

This court reviews only the BIA's decision, except to the extent that it expressly adopts the IJ's opinion. Najjar v. Ashcroft, 257 F.3d 1262, 1284 (11th Cir. 2001). Where, as here, the BIA adopts and affirms the IJ's decision but also adds its own analysis, we reviews the IJ's decision as supplemented by the BIA. Savoury v. U.S. Att'y Gen., 449 F.3d 1307, 1312 (11th Cir. 2006).

Factual determinations made by the IJ and BIA are reviewed under a "substantial evidence" standard and the "decision can be reversed only if the evidence compels a reasonable fact-finder to find otherwise." Chen v. U.S. Att'y

Gen., 463 F.3d 1228, 1230-31 (11th Cir. 2006) (quotations omitted). "Under this highly deferential test, we affirm the IJ's decision if it is supported by reasonable, substantial, and probative evidence on the record considered as a whole." Forgue v. U.S. Att'y Gen., 401 F.3d 1282, 1286 (11th Cir. 2005) (quotation and alteration omitted). We review legal determinations de novo. Hernandez v. U.S. Att'y Gen., 513 F.3d 1336, 1339 (11th Cir. 2008).

## DISCUSSION

On appeal, Barrios-Bermudez continues to argue that the BIA and IJ erroneously found that he was removable under INA § 212(a)(6)(C)(ii). Because Barrios-Bermudez conceded removability under § 212(a)(7)(A)(i)(I), however, the question of his removability under § 212(a)(6)(C)(ii) is moot. The doctrine of mootness derives directly from the case-or-controversy limitation on the jurisdiction of federal courts under Article III of the Constitution "because an action that is moot cannot be characterized as an active case or controversy." Al Najjar v. Ashcroft, 273 F.3d at 1335 (quotations omitted). "A case is moot when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." Id. at 1335-36 (quotations and alteration omitted). "[P]ut another way, a case is moot when it no longer presents a live controversy with respect to which the court can give meaningful relief." Id. at 1336

8

(quotations omitted). Here, because Barrios-Bermudez has conceded that he is removable under one provision of the INA, it is a moot question whether he is also removable under a second provision.

Barrios-Bermudez argues that he was eligible for asylum because the government scolded him "on many occasions" for expressing views against the government, and his wife and children were threatened and harassed by the government after they attempted to leave Cuba. Specifically, he asserts that the government persecuted his family by physically detaining his wife for two days, terminating his wife's employment, and threatening to take their children away. He states that he fears that he will be subject to the same treatment and persecution if he returns to Cuba, "particularly after having requested asylum in the U.S.

Any alien who is physically present in the United States may apply for asylum. Mejia v. U.S. Att'y Gen., 498 F.3d 1253, 1256 (11th Cir. 2007). The Attorney General may grant asylum if an alien is a "refugee." Id. The INA defines "refugee" as:

> [A]ny person who is outside any country of such person's nationality or, in the case of a person having no nationality, is outside any country in which such person last habitually resided, and who is unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of, that country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or

9

political opinion.

8 U.S.C. § 1101(a)(42)(A). The alien bears the burden to demonstrate "(1) past persecution on account of a statutorily protected ground or (2) a well-founded fear of future persecution on account of a protected ground." Mejia, 498 F.3d at 1256.

A well-founded fear of persecution requires "a reasonable possibility of suffering such persecution if he or she were to return to that country." Id. (emphasis omitted). Proof of past persecution creates a presumption of a well-founded fear of future persecution. Id. at 1257. An alien must show that his fear of future persecution is "subjectively genuine and objectively reasonable." Ruiz v. U.S. Att'y Gen., 440 F.3d 1247, 1257 (11th Cir. 2006). A well-founded fear of persecution can be established by "specific, detailed facts showing a good reason to fear that he will be singled out for persecution" on account of a protected ground. Id. at 1258. As an alternative to demonstrating that he would be "singled out for persecution," an alien may show a pattern or practice in the subject country of persecuting members of a statutorily defined group of which the alien is a part. 8 C.F.R. § 208.13(b)(2)(iii).

This court has described persecution as an "extreme concept, requiring more than a few isolated incidents of verbal harassment or intimidation." Sepulveda v. U.S. Att'y Gen., 401 F.3d 1226, 1231 (11th Cir. 2005) (quotations omitted).

10

Severe physical injury is not required to establish past persecution. Sanchez Jimenez v. U.S. Att'y Gen., 492 F.3d 1223, 1233 (11th Cir. 2007). Menacing threats, however, without more, do not rise to the level of past persecution. See Sepulveda, 401 F.3d at 1231.

After a thorough review of the record, we discern no error. The record does not compel the conclusion that Barrios-Bermudez was subjected to past persecution; he was never harmed, arrested, detained, or even threatened in Cuba. Barrios-Bermudez testified that the government scolded him on more than one occasion for expressing views against the government. As stated above, however, verbal harassment alone does not rise to the level of persecution. Id. His wife's experiences also do not rise to the level of persecution. Being detained for two days and having her employment suspended do not constitute detention. See Zheng v. U.S. Att'y Gen., 451 F.3d 1287, 1290-91 (11th Cir. 2006) (holding that a brief detention and termination from employment do not rise to the level of persecution). Barrios-Bermudez failed to establish that he had experienced past persecution.

An alien who has not shown past persecution may still be entitled to asylum if he can demonstrate a well-founded fear of future persecution on account of a statutorily listed factor. See Sepulveda, 401 F.3d at 1231; 8 C.F.R. § 208.13(b)(2).

11

To prevail, the applicant's fear of persecution must be both "subjectively genuine and objectively reasonable." See Al Najjar, 257 F.3d at 1289. Because we agree with the BIA and the IJ that Barrios-Bermudez's fear that he will be persecuted for applying for asylum is not objectively reasonable, we hold that he failed to establish eligibility for asylum on account of a well-founded fear of future persecution. The record does not compel the conclusion that Barrios-Bermudez will be persecuted for this reason. His wife was punished for attempting to flee the country with their children, but the punishment she received did not rise to the level of persecution. Additionally, other than the State Department's note that it was possible that in some cases the Cuban government could determine if a returning citizen had applied for asylum, Barrios-Bermudez produced no compelling evidence showing that the Cuban government would learn of his asylum application or persecute him for having made the application.

Finally, Barrios-Bermudez fears he will be persecuted for violating Cuban law by overstaying his permission to leave the country; however, "[p]rosecution for violating Cuba's travel laws is not persecution within the meaning of the Act." Barreto-Claro v. U.S. Att'y Gen., 275 F.3d 1334, 1340 (11th Cir. 2001). Also, the State Department's report notes that there has been an increasing "depenalization" of this crime, and offenders tend to receive punishments of fines or house arrest

12

rather than imprisonment."

As Barrios-Bermudez did not establish past persecution or a well-founded fear of future persecution, he did not satisfy his burden of proof to demonstrate eligibility for asylum. Having failed to establish a claim for asylum, he has necessarily failed to meet the more stringent standard required to for withholding of removal. See Rodriguez Morales v. U.S. Att'y Gen., 488 F.3d 884, 891 (11th Cir. 2007).

## CONCLUSION

For the foregoing reasons, we **DENY** Barrios-Bermudez's petition for review.